## BEFORE THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| **IN RE: PROTEIN CONTENT LITIGATION** | **MDL NO. _____** |

## MEMORANDUM IN SUPPORT OF BEYOND MEAT'S MOTION FOR TRANSFER AND CONSOLIDATION OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 TO THE NORTHERN DISTRICT OF ILLINOIS OR, IN THE ALTERNATIVE, THE EASTERN DISTRICT OF NEW YORK

Pursuant to 28 U.S.C. § 1407 and Judicial Panel on Multidistrict Litigation ("JPML") Rule 6.2, Defendant Beyond Meat, Inc. ("Beyond Meat") respectfully submits this memorandum in support of its motion for an order from the Panel transferring and consolidating the currently-filed cases listed in the attached Schedule of Actions (collectively, "the Actions") as well as any cases subsequently filed involving similar facts or claims ("tag-along cases"):

## I.     INTRODUCTION

There are no fewer than five federal judges in four different districts currently presiding over putative class cases against Beyond Meat that all involve the very same products and the very same issues, namely whether Beyond Meat's advertising and marketing claims for certain of its products are accurate.  None of these cases have entered into discovery, and all are in the nascent stages of litigation.  Moreover, the proposed classes for each of the putative class actions are all overlapping, and the allegations in each of the five class cases currently pending are nearly identical, if not verbatim of each other.

As such, this is the very sort of situation for which Section 1407 was designed.  Absent transfer and consolidation, there would be an enormous amount of unnecessary duplication and a needless diversion of judicial resources.  Absent transfer and consolidation, there is also a substantial risk of inconsistent and conflicting rulings on critical issues, including but not limited

to federal preemption as well as class certification.  For these reasons and for the reasons set forth more fully below, transfer and consolidation are fully warranted here.  See disc. infra at 2-13.

## II.   BACKGROUND

The factual background pertinent to Beyond Meat's motion is set forth below.  See disc. infra at 2-5.

### A.   The Pending Cases

At least five putative class actions have been filed against Beyond Meat in no fewer than four federal district courts, bringing claims relating to Beyond Meat's product labels.  See Schedule of Actions.[1]  These five actions are identified on the attached Schedule of Actions.  Id. In addition, two other actions were filed in the United States District Court for the Central District of California but voluntarily dismissed when it appeared that a settlement might be reached.[2]  Our

---

[1] As detailed in the Schedule of Actions, the pending putative class cases are as follows:

1. Roberts, et al. v. Beyond Meat, Inc., Case No. 1:22-cv-02861 (N.D. Ill. filed May 31, 2022) ("Roberts") (see Roberts Civil Docket and Compl., Ex. 1);

2. Borovoy v. Beyond Meat, Inc., Case No. 1:22-cv-06302 (N.D. Ill. removed on Nov. 10, 2022) ("Borovoy") (see Borovoy Civil Docket and Compl., Ex. 4);

3. Garcia, et al. v. Beyond Meat, Inc., Case No. 4:22-cv-00297 (S.D. Iowa filed Sept. 9, 2022) ("Garcia") (see Garcia Civil Docket and Compl., Ex. 5);

4. Cascio v. Beyond Meat, Inc., Case No. 2:22-cv-04018 (E.D.N.Y. filed July 8, 2022) ("Cascio") (see Cascio Civil Docket and Compl., Ex. 6); and

5. Miller v. Beyond Meat, Inc., Case No. 1:22-cv-06336 (S.D.N.Y. filed July 26, 2022) ("Miller") (see Miller Civil Docket and Compl., Ex. 8);

[2] Beyond Meat engaged in early mediation with counsel who filed Roberts and Borovoy overseen by Judge Wayne R. Andersen (Ret.) with JAMS, in an effort to see if an early settlement might be reached.  See Roberts Agreed Motion (Dkt. 13), Ex. 2 (referencing settlement negotiations); Roberts Agreed Motion (Dkt. 16), Ex. 3 (same).  Those efforts, which spanned upwards of three months, were, however, ultimately unsuccessful, in spite of considerable efforts by Judge Andersen.

anticipation and understanding is that one or more of the California cases that were voluntarily dismissed will be reinstated now that it is clear a settlement will not be reached.[3]

All five pending actions are based upon the same allegations: namely, that Beyond Meat has made false and misleading statements in its marketing materials and product packaging with respect to certain products (the "Products") by allegedly: (1) miscalculating and overstating the Products' protein content; (2) miscalculating and overstating the quality of the Products' protein; and (3) misleading consumers into believing that the Products provide the same nutritional benefits as traditional meat-based products.[4] See, e.g., Roberts Compl., Ex. 1, ¶ 3 (alleging Beyond Meat "miscalculates and overstates the Products' protein content," "miscalculates and overstates the quality of the protein found in its products" and "misleads customers into believing that" its Products "provide equivalent nutritional benefits to that found in traditional meat-based products"); Borovoy Compl., Ex. 4, ¶ 3 (alleging Beyond Meat "miscalculates and overstates the Products' protein content," "miscalculates and overstates the quality of the protein found in its products" and "misleads customers into believing that" its Products "provide equivalent nutritional benefits to that found in traditional meat-based products"); Garcia Compl., Ex., ¶ 3 (alleging Beyond Meat "miscalculates and overstates the Products' protein content," "miscalculates and

---

[3] The two California cases were brought by plaintiffs and counsel different than those set forth in the current Schedule of Actions. Compare Notice of Voluntary Dismissal (Dkt. 19), Yoon v. Beyond Meat, Inc., Case No. 5:22-cv-01032 (C.D. Cal.), and Notice of Voluntary Dismissal (Dkt. 66), DeLoss v. Beyond Meat, Inc., Case No. 2:22-cv-04405 (C.D. Cal.), with Schedule of Actions.

[4] The Products at issue in each of the pending cases are also the same, specifically: (1) Sausage Plant-Based Dinner Links Hot Italian 14 oz; (2) Beyond Sausage Plant-Based Dinner Sausage Links Brat Original 14 oz; (3) Beyond Beef Plant-Based Patties; (4) Beyond Beef Plant-Based Ground Beef; (5) Beyond Breakfast Sausage Plant-Based Breakfast Patties Classic; (6) Beyond Breakfast Sausage Plant-Based Breakfast Patties Spicy; (7) Beyond Chicken Plant-Based Breaded Tenders Classic; (8) Beyond Meatballs Italian Style Plant-Based Meatballs; and (9) Beyond Breakfast Sausage Plant-Based Breakfast Links Classic. See Roberts Compl., Ex. 1, ¶ 1; Borovoy Compl., Ex. 4, ¶ 1; Garcia Compl., Ex. 5, ¶ 1; Cascio Compl., Ex. 6, ¶ 19; Miller Compl., Ex. 8, ¶ 1.

overstates the quality of the protein found in its products" and "misleads customers into believing that" its Products "provide equivalent nutritional benefits to that found in traditional meat-based products"); Cascio Compl., Ex. 6, ¶ 4 (alleging "Beyond Meat products contain significantly less protein than what is stated on the product packaging"); Miller Compl., Ex. 8, ¶ 26 (alleging Beyond Meat's Products "contain significantly less protein than advertised and marketed").

In each of the five putative class actions currently pending, the plaintiffs seek certification of nationwide classes of persons who purchased the Products, and several also seek certification of overlapping state classes.  See, e.g., Roberts Compl., Ex. 1, ¶¶ 62-65 (seeking certification of a national class, multi-state class, Massachusetts class, Illinois class and New York class of persons who purchased the Products for personal use and not for resale); Borovoy Compl., Ex. 4, ¶ 63 (seeking certification of a national class, multi-state class and Illinois class of persons who purchased the Products for personal use and not for resale); Garcia Compl., Ex. 5, ¶ 51 (seeking certification of a national class of persons who purchased the Products for personal use and not for resale); Cascio Compl., Ex. 6, ¶ 35 (seeking certification of a national class, ten-state class and New York class of all persons who purchased the Products for personal use and not for resale within applicable statute of limitations period); Miller Compl., Ex. 8, ¶ 49 (seeking certification of a national class of consumers who purchased the Products); see also, e.g., Compl. (Dkt. 1), Ex. 9, ¶ 36, Yoon v. Beyond Meat, Inc., Case No. 5:22-cv-01032 (C.D. Cal.) (similar request for class certification in case voluntarily dismissed in light of settlement negotiations).

As noted (see disc. supra at 2-3), two putative class actions also based on the same foregoing allegations were filed in the United States District Court for the Central District of California.  See Compl. (Dkt. 1), Ex. 9, ¶ 4, Yoon v. Beyond Meat, Inc., Case No. 5:22-cv-01032 (C.D. Cal.) (alleging "Beyond Meat products contain significantly less protein than what is stated

4

on the product packaging"); Compl. (Dkt. 1), Ex. 10, ¶ 28, <u>DeLoss v. Beyond Meat, Inc.</u>, Case No. 2:22-cv-04405 (C.D. Cal.) (alleging Beyond Meat "overstates the actual protein amount in its Products").  Although these actions were voluntarily dismissed, Beyond Meat has reason to believe these actions will be refiled, given that those dismissals were without prejudice and occurred while settlement negotiations were ongoing.  <u>See</u>, <u>e.g.</u>, Letter Motion (<u>Cascio</u> Dkt. 12), Ex. 7 (indicating that mediation with the Honorable Wayne R. Andersen (Ret.) of JAMS was scheduled to take place on October 11, 2022).

### B.   Status Of The Pending Cases

All of the foregoing cases are in the very beginning stages of litigation.  Indeed, all five of the currently operative Complaints have been filed within the last six months.  <u>See</u> <u>Roberts</u> Civil Docket, Ex. 1; <u>Borovoy</u> Civil Docket, Ex. 4; <u>Garcia</u> Civil Docket, Ex. 5; <u>Cascio</u> Civil Docket, Ex. 6; <u>Miller</u> Civil Docket, Ex. 8.  As a consequence, discovery has not begun in <u>any</u> of these recently filed actions, due in part to the aforementioned settlement negotiations, which spanned several months.  <u>See</u> Agreed Motion (<u>Roberts</u> Dkt. 13), Ex. 2 (motion dated August 30, 2022, indicating the parties were in the process of exploring settlement); Agreed Motion (<u>Roberts</u> Dkt. 16), Ex. 3 (motion dated October 4, 2022, indicating the parties were continuing the process of exploring settlement).  In fact, Beyond Meat has not yet filed an answer or otherwise responded in <u>any</u> of these actions.  <u>See</u> <u>Roberts</u> Civil Docket, Ex. 1; <u>Borovoy</u> Civil Docket, Ex. 4; <u>Garcia</u> Civil Docket, Ex. 5; <u>Cascio</u> Civil Docket, Ex. 6; <u>Miller</u> Civil Docket, Ex. 8.

### III.   <u>DISCUSSION</u>

Each of the requirements for transfer and consolidation under Section 1407 are satisfied here.  <u>See</u> disc. <u>infra</u> at 6-11.

### A.   These Cases Easily Meet The Standard For Transfer And Consolidation Under 28 U.S.C. § 1407

The five cases pending against Beyond Meat in four different jurisdictions present precisely the sort of situation for which 28 U.S.C. § 1407 was enacted and thus plainly meet the standards for transfer and consolidation articulated by this Panel.  <u>See</u>, <u>e.g.</u>, <u>In re Food Fair</u>, 465 F. Supp. 1301, 1304-05 (J.P.M.L. 1979); <u>In re Plumbing Fixture Cases</u>, 298 F. Supp. 484, 490-92 (J.P.M.L. 1968).[5]  Given the very similar (and in many instances literally <u>identical</u>) allegations in each of the actions, the threshold requirement that the actions involve common issues of fact is easily met.  <u>See</u> 28 U.S.C. § 1407; disc. <u>infra</u> at 7.  <u>Compare</u> <u>also</u> <u>Roberts</u> Compl., Ex. 1, ¶ 6 (alleging Beyond Meat "has engaged in unfair and/or deceptive business practices by intentionally misrepresenting the nature and quality of Beyond Meat Products on the Products' respective nutrition labels and by failing to follow federal regulations that set forth the appropriate testing methodologies for determining protein content"), <u>with</u> <u>Garcia</u> Compl., Ex. 5, ¶ 6 (verbatim allegation that Beyond Meat "has engaged in unfair and/or deceptive business practices by intentionally misrepresenting the nature and quality of Beyond Meat Products on the Products' respective nutrition labels and by failing to follow federal regulations that set forth the appropriate testing methodologies for determining protein content").  Moreover, there are several other

---

[5] As the Panel has repeatedly emphasized, transfer and consolidation are appropriate when actions pending in different judicial districts involve similar questions of fact such that consolidating pretrial proceedings would "promote the just and efficient conduct of such actions."  28 U.S.C. § 1407.  In relevant part, 28 U.S.C. § 1407 provides as follows:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

<u>Id.</u>; <u>see also</u>, <u>e.g.</u>, <u>In re Nifedipine</u>, 266 F. Supp. 2d 1382, 1382 (J.P.M.L. 2003).

benefits to transfer and consolidation, including the fact that it would promote efficiency, minimize the potential for duplicative discovery, minimize the likelihood of inconsistent pretrial decisions (including inconsistent class decisions) and increase the possibility of achieving coordination between the federal courts and any state courts that later become involved.  See disc. infra at 10-11.

### 1.     There Are Numerous Overlapping Actions Containing Nearly Identical Claims And Factual Allegations

As noted above, Beyond Meat is currently defending five putative class actions in four different jurisdictions in which relief is sought for nearly identical classes based upon nearly identical factual allegations that Beyond Meat allegedly (1) miscalculates and overstates the Products' protein content, (2) miscalculates and overstates the quality of the Products' protein and (3) misleads consumers into believing that the Products provide the same nutritional benefits as traditional meat-based products.  See disc. supra at 3-4.  This alone is sufficient to warrant transfer and consolidation.   See, e.g., In re HSBC Bank, 949 F. Supp. 2d 1358 (J.P.M.L. 2013) (consolidating three class actions); In re Foot Locker, 787 F. Supp. 2d 1364, 1366 (J.P.M.L. 2011) (transferring and consolidating four class actions); In re VA Data Theft, 461 F. Supp. 2d 1367, 1369 (J.P.M.L. 2006) (transferring and consolidating three class actions); see also In re Plumbing Fixtures, 308 F. Supp. 242, 244 (J.P.M.L. 1970) ("Such a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts.").[6]

---

[6] We are compelled to note, however, that the criteria listed in 28 U.S.C. § 1407 of having "one or more common questions of fact" are considerably different from the criteria set forth in Federal Rule of Civil Procedure 23 for class certification.  Compare 28 U.S.C. § 1407, with Fed. R. Civ. P. 23(a)(2) and Fed. R. Civ. P. 23(b)(3).  Under Section 1407, the Panel is concerned only with common facts alleged between and among the actions filed.  See 28 U.S.C. § 1407.  Beyond Meat's

**2.    Transfer And Consolidation Would Promote Efficiency
And Minimize The Potential For Duplicative Discovery**

Transfer and consolidation of these actions would promote efficiency and minimize the

potential for duplicative discovery.  See, e.g., In re Skelaxin (Metaxalone), 856 F. Supp. 2d 1350,

1352 (J.P.M.L. 2012).  As discussed above, each of the five actions currently pending are based

upon allegations that Beyond Meat's Product labels are misleading, because they allegedly

overstate the protein content, protein quality and nutritional benefits of its Products.  See disc.

supra at 3-4.  The appropriate scope of federal preemption will undoubtedly be a threshold question

that can best be decided by one federal judge instead of five or more.  See In re Acetaminophen –

ASD/ADHD Prods. Liability Litig., 2022 WL 5409345, * 2 (J.P.M.L. 2022) ("A single MDL is

the most appropriate vehicle for resolving defendants' common defenses concerning preemption

and general causation").  Moreover, Plaintiffs in each of these actions are likely to seek discovery

regarding, among other things, the protein in the Products as well as Beyond Meat's advertising

and labeling practices, if any of their claims survive after the proper scope of preemption is

decided.  See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig., 201 F. Supp.

3d 1375, 1378 (J.P.M.L. 2016) (noting that transfer and consolidation were appropriate to handle

overlapping discovery when the actions shared a common factual core); In re Marriott Int'l, Inc.,

Customer Data Security Breach Litig., 363 F. Supp. 3d 1372, 1374 (J.P.M.L. 2019) (finding

---

recognition that the actions share common allegations and, therefore, are likely to share common
discovery in no way speaks to whether there are common questions of fact between the members
of the proposed classes or whether class certification would otherwise be appropriate.  See, e.g.,
Wal-Mart v. Dukes, 131 S.Ct. 2541, 2551 (2011) (reiterating that district courts must conduct a
"rigorous analysis" of the Rule 23 requirements prior to certifying a class); see also Multidistrict
Litig. Man. § 5:11 (West 2014) ("Transfer of multiple actions under 28 U.S.C.A. § 1407 for
coordinated or consolidated pretrial proceedings is significantly different from certification of an
action or actions to proceed as a class or classes under Fed. R. Civ. P. 23. . . .   The Panel has
recognized that the questions of class action certification and § 1407 transfer are sufficiently
unrelated[.]").

consolidation appropriate in order to minimize duplicative discovery regarding allegations relating to data security breach, even when class case also posed "unique factual issues").

In addition, these actions are likely to involve complicated protein-testing issues regarding whether Beyond Meat in fact overstates or miscalculates the quality and/or content of the protein in its Products (which Beyond Meat strongly denies), resulting in complex expert reports and likely Daubert hearings, all of which would be more efficiently handled in a consolidated proceeding. See, e.g., In re Natrol, Inc. Glucosamine/Chondroitin, 26 F. Supp. 3d 1392, 1393 (J.P.M.L. 2014). Similarly, plaintiffs in each of the Actions are likely to seek to depose many of the very same witnesses. See, e.g., In re Auto Body Shop, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) (transfer before a single judge was beneficial, because the judge could "structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands"); In re Enfamil Lipil, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("Centralizing the actions will allow for the efficient resolution of common issues and prevent unnecessary or duplicative pretrial burdens from being placed on the common parties and witnesses.").

Given the similarity of the actions, the overlapping legal issues and the potential for duplicative discovery, transfer and consolidation would inevitably conserve the resources of the parties. See, e.g., In re Air Crash at Dallas/Fort Worth Airport, 623 F. Supp. 634, 635 (J.P.M.L. 1985). It would also conserve the resources of the judiciary, as it would assign responsibility for overseeing threshold legal determinations and a pretrial plan (if necessary) to one judge as opposed to four or more different federal judges.[7] See, e.g., In re Pineapple, 342 F. Supp. 2d 1348, 1349

---

[7] As noted above (see disc. supra at 2-3), there is also a significant chance that the plaintiffs in California who voluntarily dismissed their actions may refile, which only strengthens the need for transfer and consolidation here. See, e.g., In re Natrol, 26 F. Supp. 3d at 1393.

(J.P.M.L. 2004); In re Advanced Inv. Mgmt., 254 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).  And while proceeding in separate actions would be burdensome to both plaintiffs as well as Beyond Meat, plaintiffs and their counsel would suffer no prejudice as the result of transfer and consolidation.  See disc. supra at 8-9.  All of the cases are in the early stages, and discovery has not commenced in any of them.  See id.  A coordinated discovery schedule would therefore benefit all parties.  See In re Advanced Inv. Mgmt., 254 F. Supp. 2d at 1379.

### 3.    Transfer And Consolidation Would Minimize The Risk Of Inconsistent Pretrial Decisions, Including Inconsistent Class Certification Decisions

There can be no legitimate dispute that the fact that there are five different actions containing similar allegations and asserting similar causes of actions pending before five different federal judges materially increases the likelihood that there will be inconsistent pretrial decisions, ranging from inconsistent decisions on preemption to inconsistent discovery rulings as well as decisions on class certification.  See In re AZEK Bldg. Prods., 999 F. Supp. 2d 1366, 1368 (J.P.M.L. 2014); In re Natrol, 26 F. Supp. 3d at 1393.

As the Panel has recognized, "[c]entralization will enable the transferee judge to make consistent rulings on such discovery disputes from a global vantage point" and will otherwise prevent inconsistent pretrial rulings on common factual issues.  See In re Yamaha, 597 F. Supp. 2d 1377, 1378 (J.P.M.L. 2009); see also In re Dow Chem., 650 F. Supp. 187, 188 (J.P.M.L. 1986).  In addition and perhaps most critically, it will prevent inconsistent pretrial rulings with respect to preemption and class certification.  See, e.g., In re H&R Block, 435 F. Supp. 2d 1347, 1349 (J.P.M.L. 2006) ("The three actions contain competing class allegations and involve facts of sufficient intricacy that could spawn challenging procedural questions and pose the risk of inconsistent and/or conflicting judgments.").  Indeed, the Panel has long recognized that

preventing inconsistent class decisions "presents one of the strongest reasons for" transfer and consolidation:

> [T]here are at least three other actions with class action claims which are in potential conflict with the claims asserted by these plaintiffs. Such a potential for conflicting or overlapping class actions presents one of the strongest reasons for transferring such related actions to a single district for coordinated or consolidated pretrial proceedings which will include an early resolution of such potential conflicts.

In re Plumbing Fixtures, 308 F. Supp. 242, 243-44 (J.P.M.L. 1970); see also In re Sugar Industry, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determination exists."). Given that there are currently five putative class actions with overlapping proposed classes pending before five different judges, the risk of inconsistent class decisions is, however, particularly sharp in this instance. See id.; see also disc. supra at 3-5.

### B.   Beyond Meat Proposes Consolidation In The Northern District Of Illinois, Or Alternatively, The Eastern District Of New York

At present, one of the putative class cases pending against Beyond Meat is assigned to Judge Kendall in the United States District Court for the Northern District of Illinois, and one additional class case (recently removed) is also pending in the Northern District of Illinois. See Schedule of Actions. The case currently assigned to Judge Kendall (i.e., Roberts) is the first-filed case of the Actions currently pending, though Roberts was originally assigned to Judge Norgle (who has since retired) and then Judge Kocoras before it was reassigned to Judge Kendall. Judge Kendall, however, is an experienced judge with a good deal of experience in complex and multidistrict litigation, as amply reflected by the fact that the Panel has already transferred one such action that she is currently overseeing. See In re Local TV Advertising Antitrust Litig., 338 F. Supp. 3d 1341, 1343 (J.P.M.L. 2018). As such, transfer to and consolidation before Judge Kendall would certainly be appropriate.

11

Alternatively, Beyond Meat respectfully proposes that the cases be transferred to Judge Brown, who is presiding over the action pending in the Eastern District of New York.  See Cascio Compl., Ex. 6.  The case currently assigned to Judge Brown (i.e., Cascio) is the second-filed case of the Actions currently pending.  Judge Brown is likewise an experienced judge with substantial class action experience.  Moreover, the Eastern District of New York appears to have somewhat more capacity than the Northern District of Illinois as reflected by the number of judges overseeing multidistrict litigations (in addition to their regular caseload) as compared across the two districts.[8]

Either of the foregoing jurisdictions would be a suitable venue for these cases, as both would satisfy many of the criteria the Panel considers in determining the appropriate location for consolidation.  See 17 James Wm. Moore, et al., Moore's Federal Practice § 112.04[2] (Matthew Bender 3d ed. 2007). While the plaintiffs in the underlying Actions are located in a variety of different states, six of the Named Plaintiffs in Roberts and the Plaintiff in Borovoy are located in Illinois (see Roberts Compl., Ex. 1, ¶¶ 8-13, Borovoy Compl., Ex. 4, ¶ 8).  Likewise, another Named Plaintiff in Roberts and the Named Plaintiffs in Cascio and Miller are each located in New York for a total of three Named Plaintiffs residing in New York across all of the cases currently pending.  See Roberts Compl., Ex. 1, ¶ 15; Cascio Compl., Ex. 6, ¶ 7; Miller Compl., Ex. 8, ¶ 45.  Thus, each of these locations would be convenient for a significant portion of the parties.

In addition, Chicago and New York are major metropolitan areas that would be easily accessible to the parties, witnesses and counsel.[9]  See, e.g., In re Wireless Telephone Fed. Cost

---

[8] Indeed, at the time of this filing, the Northern District of Illinois is currently overseeing 15 multidistrict litigations, compared to only four in the Eastern District of New York.  See MDL Statistics Report, U.S.J.P.M.L., available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-October-14-2022.pdf (last accessed November 14, 2022).

[9] To the extent one or both of the previously-filed actions in California are refiled before the Panel decides this motion, the Central District of California would also be a suitable forum, especially since it is home to Beyond Meat's corporate headquarters and principal place of business and

Recovery Fees Litig., 293 F. Supp. 2d 1378, 1380 (J.P.M.L. 2003); Roberts Compl., Ex. 1, ¶¶ 14-15; Cascio Compl., Ex. 6, ¶ 7; Miller Compl., Ex. 8, ¶ 45.

## IV.   **CONCLUSION**

For the reasons stated herein, Beyond Meat respectfully requests that the Panel issue an order transferring the actions listed on the Schedule of Actions to the United States District Court for the Northern District of Illinois for consolidated pretrial proceedings or, in the alternative, to the Eastern District of New York.


Dated:  November 14, 2022                              Respectfully submitted,

                                                       */s/ Robin M. Hulshizer*
                                                       Robin M. Hulshizer, One of the Attorneys for
                                                       Defendant Beyond Meat, Inc.

                                                       Robin M. Hulshizer (Illinois Bar No. 6230994)
                                                       LATHAM & WATKINS LLP
                                                       330 North Wabash Avenue, Suite 2800
                                                       Chicago, Illinois 60611
                                                       Telephone: (312) 876-7700
                                                       Facsimile:  (312) 993-9767
                                                       Email:      robin.hulshizer@lw.com

---

serves as the location of Beyond Meat's documents and data as well as the residence of all of its corporate witnesses.  See, e.g., In re 100% Grated Parmesan Cheese, 201 F. Supp. 3d at 1378.